IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TINA POWELL,

     Petitioner,

v.                                                          No. 1:18-cv-01003-JDB-jay

UNITED STATES OF AMERICA,

     Respondent.


ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*


Petitioner, Tina Powell,[1] has filed a *pro se* motion to vacate, set aside, or correct her sentence (the "Petition"), pursuant to 28 U.S.C. § 2255.  (Docket Entry  ("D.E.") 1.)[2]  For the following reasons, the Petition is DENIED.

BACKGROUND

In February 2016, a federal grand jury for the Western District of Tennessee charged Powell with two counts of distributing, attempting to distribute, possessing with intent to distribute, and attempting to possess with intent to distribute "a detectable amount of methamphetamine[.]"  (*United States v. Powell*, No. 1:16-cr-1007-JDB-1 ("No. 1:16-cr-10017-JDB-1"), D.E. 2.)  The Defendant was initially represented by an assistant public defender, but she retained the services of Attorney Hugh Reed Polland, III, commencing in May 2016.  (*Id.*, D.E. 17.)  On July 21, 2016, Powell entered a plea of guilty to both charges pursuant to a written plea agreement with the Government.  (*Id.*, D.E. 20, D.E. 22, D.E. 21.)

---

[1] The Court will refer to Powell as "the Defendant" in its discussion of her criminal case.

[2] Record citations are to documents filed in the instant case, unless noted otherwise.

In preparation for sentencing, the probation officer advised in the presentence report (the "PSR") that the Defendant qualified as a career offender under § 4B1.1 of the United States Sentencing Commission *Guidelines Manual* ("U.S.S.G" or "Guidelines").  (PSR at ¶ 20.)  That provision states that "[a] defendant is a career offender if," among other things, she "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).  The probation officer identified three career-offender predicates in Powell's criminal history: two Tennessee convictions for possession of methamphetamine with intent to manufacture, deliver, or sell (PSR at ¶¶ 78, 79), and a conviction for possession of marijuana with intent to manufacture, deliver, or sell (*id.* at ¶ 79).  The Defendant's advisory Guidelines imprisonment range was determined to be 151 to 188 months.  (*Id.* at ¶ 133.)

The parties subsequently filed position papers reporting that neither had objections to the PSR.  (No. 1:16-cr-10017-JDB-1, D.E. 25, D.E. 26.)  On October 31, 2016, the Defendant filed, pro se, a letter to the Court stating that she wished to "fire [her] attorney" because she did not "feel that he [was] representing [her] to the best of his ability."  (*Id.*, D.E. 28.)  The Court construed the letter as a motion to dismiss counsel and ordered Attorney Polland to respond to the motion.  (*Id.*, D.E. 29.)  Counsel filed a response detailing his interactions with the Defendant during his representation of her.  (*Id.*, D.E. 30.)  In particular, he discussed what transpired during the pre-plea stage:

> [I] met [with Powell] for the first time on April 15, 2016 at the Obion County Jail.  This meeting lasted approximately 2.5 hours.  At this meeting, [I] discussed the merits and details of the case with the defendant.  I reviewed the discovery provided with the Defendant.  We discussed her case in terms of a trial in this case, however, the Federal Public Defender had previously discussed the possibility of a proffer agreement with the US Attorney.  The Defendant was interested in the proffer from the outset of my representation.  At this initial meeting we discussed the pros and cons of going to trial [as] opposed to cooperation with the United States and with the possibility of a reduction in

2

sentence.  We discussed the nature of the conspiracy charge.  We discussed this fully and after consideration we determined that it would be in the Defendant's best interest to pursue a proffer agreement with the US Attorney.

I called the US Attorney and we agreed to set up a proffer meeting in Jackson.  I received a letter from the US Attorney regarding the conditions that must be met for the US Attorney to consider receiving a proffer from the Defendant.  I drove from Clarksville, Tennessee to Jackson, Tennessee on May 9, 2016 for a hearing in this Court and to meet with the agents from the US Marshal[] Service regarding the proffer.  I met with the US Attorney prior to meeting with the US Marshals.  I reviewed the letter from the US Attorney, and proffer agreement with my client fully and in detail prior to entering into any statements made to the US Marshal[]s.  My client indicated to me she understood and executed the proffer agreement.  After a lengthy meeting with the US Marshal's, the defendant and I talked and had further discussions on her statements[']s impact on her case.

The Defendant announced that she would like to enter a change of plea on June 22, 2016.  Prior to this we discussed that it was in her best interests to do so based on our prior discussions and the proffer meeting.  Subsequently, we received an offer from the US Attorney and what the US Attorney recommendations would be, and the defendant found this acceptable.  We discussed what her sentencing range was, and what I believed the low end of the guidelines would be based on her cooperation and acceptance of responsibility.  I fully reviewed the Plea Agreement with the defendant, and answered any questions she had prior to executing her plea.

(*Id.*, D.E. 30 at PageID 140-41.)

At the proceedings on November 3, 2016, the Defendant "advised the Court that she no longer desired the services of her hired attorney and made an oral request for new counsel."  (*Id.*, D.E. 31.)  "The Court [o]rdered that the Federal Public Defender's Office be reappointed to represent the [defendant] and relieved Attorney Polland from further representation."  (*Id.*, D.E. 31.)

On November 7, 2016, Assistant Federal Defender Christina Wimbley filed an appearance as counsel for the Defendant.  (*Id.*, D.E. 36.)  Counsel thereafter filed under seal a new position paper.  (*Id.*, D.E. 41.)

On January 4, 2017, the Court conducted a hearing on the Government's motion under U.S.S.G. § 5K1.1.[3]  (*Id.*, D.E. 51.)  At the sentencing hearing that same day, the Court found that the Defendant was a career offender for which she received a sentence of 130 months on each count, to be served concurrently.  A concurrent period of three years' supervised release was also imposed.  The Court found that "Ms. Powell did waive her right to appeal her sentence, which the Court finds was freely and voluntarily made."  (*Id.*, D.E. 50 at PageID 230.)

That same day, the Clerk of Court received and docketed a pro se letter from the Defendant postmarked December 24, 2016.  (*Id.*, D.E. 44.)  In the letter, Powell stated that she did not understand the terms of the plea agreement and the consequences of pleading guilty due to her retained attorney's alleged failure to properly advise her.  She related that she "explain[ed] the situation" to her new counsel, Wimbley, and asked her if she "was able to withdraw [the guilty] plea[s]."  (*Id.*, D.E. 47 at PageID 165.)  She stated that Wimbley advised her that she could not withdraw her pleas.  On January 5, 2017, the Court entered an order directing counsel to advise the Court as to the status of Defendant's guilty plea.  (*Id.*, D.E. 45.)

In compliance with the order, the assistant public defender filed a response explaining that she "met with Defendant on December 29, 2016 to prepare for [the] sentencing hearing scheduled for January 4, 2017."  (*Id.*, D.E. 48 at PageID 186.)  During the meeting, the "Defendant advised counsel that she had questions regarding the Plea Agreement which she entered into under the advisement of her former attorney, Hugh Polland."  (*Id.*, D.E. 48 at PageID 186.)  Counsel

---

[3] Section 5K1.1 allows the court to "depart from the guidelines" "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense."  U.S.S.G. § 5K1.1.

answered the Defendant's questions.  Powell then "informed counsel that she had written a letter to the Court stating that she wished to withdraw her plea; but, that her questions regarding the Plea Agreement had now been satisfied." (*Id.*, D.E. 48 at PageID 186.)  She told Wimbley "that she wished to proceed with the sentencing hearing and that she no longer wished to withdraw her guilty plea." (*Id.*, D.E. 48 at PageID 186.)  Petitioner did not take a direct appeal.

DISCUSSION

Powell filed the Petition on January 3, 2018.  She asserts that her retained attorney "misrepresented his experience in handling federal criminal defense matters" (Claim 1) and failed to advise her "that if she pleaded guilty . . . she would have to give up her rights to contest the arguably-questionable career offender category in which she had been placed based upon the U.S. Probation Department's classification of prior offenses as qualifying offenses for that designation" (Claim 2).  (D.E. 1-1 at PageID 19, 20.)   She further maintains that Polland provided ineffective assistance at sentencing by "fail[ing] to prepare to adequately argue the sentencing factors favorable to" her and to seek her placement in the Bureau of Prison's drug treatment program (Claim 3).  (*Id.* at PageID 22-23.)  With regard to Wimbley, Powell insists that she was ineffective for "fail[ing] to ensure that Petitioner received a sentence reduction for her cooperation" (Claim 4).  (*Id.* at PageID 23.)  She also asserts that she "may . . .be entitled to relief based upon the holding of Mathis v. United States" (Claim 5).  (*Id.* at PageID 24.)

On October 14, 2018, Respondent, the United States of America, filed a response to the Petition (the "Response"),  (D.E. 17.),  contending that all claims were without merit.  In reply, Petitioner insisted that she was entitled to relief.  (D.E. 25.)

5

I.    Legal Standards

A prisoner seeking to vacate her sentence under § 2255 "must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).  "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted).  "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* at 333 (internal quotation marks omitted).  A petitioner has the burden of proving that she is entitled to relief by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of her Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable under § 2255. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

II.    Claim 1

As indicated above, Powell asserts in Claim 1 that Polland "misrepresented his experience in handling federal criminal defense matters." (D.E. 1-1 at PageID 19.) She alleges that "counsel represented to [her] that he was experienced in federal criminal defense law, and Petitioner and her family accepted the[] misrepresentation[], and paid him the requested fee." (*Id.*) She further avers that "after plea negotiations were completed [counsel] acknowledged that this was his first federal criminal case." (*Id.*) She asserts "counsel's lack of thorough investigation, inability or unwillingness to fully explain the intricacies of a plea agree[ment] to Petitioner, who has . . . only

7

an 8th grade education, put [her] at a considerable disadvantage during the proceedings and severely prejudiced her[] interests." (*Id.*)  She also complains that counsel "consistently failed to respond to her question[s] [and] make adequate explanation of complex legal concepts[,] [including] a plea agreement that she was unable to comprehend until after she was already sentenced." (*Id.*)

Respondent argues that, even if true, a misrepresentation by counsel regarding his experience in federal criminal matters does not "constitute[] a violation of the Sixth Amendment right to counsel." (D.E. 17 at PageID 66.)  As for the remaining allegations set forth in Claim 1, the Government maintains that they do not provide a basis for relief because they are conclusory. Respondent's arguments are well-taken.

Even assuming that counsel had never tried a criminal case in federal court at the time he undertook his representation of Petitioner, his lack of experience does not, standing alone, establish that his performance was deficient or that Powell was prejudiced by his inexperience.  *See McKanry v. United States*, No. 4:12-CV-64 CAS, 2015 WL 475970, at *3 (E.D. Mo. Feb. 4, 2015) ("Merely being inexperienced in federal court does not show deficient performance."); *United States v. Salameh*, 54 F. Supp. 2d 236, 250 (S.D.N.Y. 1999), *aff'd*, 16 F. App'x 73 (2d Cir. 2001) (rejecting petitioner's claim that counsel was ineffective simply because he was inexperienced in federal criminal cases); *Thomas v. Gramley*, 951 F. Supp. 1338, 1350 (N.D. Ill. 1996), *aff'd sub nom. Thomas v. Gilmore*, 144 F.3d 513 (7th Cir. 1998) ("Standing alone, then, the mere fact that Thomas was Gustafson's first murder and capital client does not automatically render her representation constitutionally ineffective.").  As the United States Supreme Court has observed, "[e]very experienced criminal defense attorney once tried his first case . . . The character of a

8

particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation." *United States v. Chronic*, 466 U.S. 648, 665 (1984). Accordingly, Powell's allegation that counsel was ineffective merely because he allegedly had never tried a criminal case in federal court before is inadequate to support her position.

Nor is the claim supported by the remaining allegations that counsel failed to conduct a thorough investigation, explain the intricacies of the plea agreement and complex legal issues, and respond to Powell's questions. Rule 2 of the *Rules Governing Section 2255 Proceedings for the United States District Courts* mandates that § 2255 petitions "must . . . state the facts supporting each ground" for relief. Rule 2(b)(2). Therefore, a § 2255 petition is "legally insufficient to sustain a review" where the "claims are stated in the form of conclusions without any allegations of fact in support thereof." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam). With regard to ineffective assistance of counsel in particular, "[m]erely conclusory allegations . . . are insufficient to state a constitutional claim" *Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012). Powell's allegations of alleged attorney deficiencies under Claim 1 are conclusory and unsupported by specific factual assertions. As the Government aptly notes, Petitioner does not identify "one matter that was not investigated, one intricacy of the plea agreement that was not explained, one question that was not answered, one purported complex legal concept that was not explained, nor what in the plea agreement she allegedly was unable to understand." (D.E. 17 at PageID 66.) It is notable that, at the time she filed her Reply, Petitioner was on notice of the pleading deficiency, but she did not offer more detailed explanations. Claim 1 is therefore DENIED.

III.    Claim 2

Powell asserts that Polland rendered ineffective assistance by failing to advise her that, by pleading guilty, she would relinquish her right to challenge her designation as a career offender. She also claims that her plea was involuntary due to counsel's "apparent lack of knowledge . . . as to the probable sentence, [and] alternative courses of action[.]"  (D.E. 1-1 at PageID 21.)  The inmate further complains that her plea was "render[ed] . . . involuntary" by counsel's "inability or unwillingness to seek drug treatment [for Defendant] that might have reduced her[] sentence if successfully completed, [and] to contest the forfeiture of the proceeds of the sale of her automobile[.]"  (*Id.*)

"A guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial ... and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)).

*Strickland*'s two-part test applies to a claim that counsel was ineffective at the plea stage of the criminal proceedings.  *Rodriguez-Penton v. United States*, 905 F.3d 481, 486 (6th Cir. 2018). "Where . . . a defendant is represented by counsel during the plea process and enters h[er] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*,

474 U.S. 52, 56 (1985) (quoting *Mann v. Richardson*, 397 U.S. 759, 771 (1970)).  A petitioner demonstrates prejudice in the plea context by establishing "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  Because "[t]he standard for prejudice in this context is objective," the inmate must show "'that a decision to reject the plea bargain would have been rational under the circumstances.'"  *Moore v. United States*, 676 F. App'x 383, 386 (6th Cir. 2017) (quoting  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Powell's first assertion—*i.e.*, that she would not have pleaded guilty had she known she was waiving her right to challenge her career-offender status—is unsupportable because the foundational allegation is belied by the record.  Specifically, there was nothing in the plea agreement that constituted a waiver to contest any part of the PSR, which designated her as a career offender.  In fact, at the change of plea hearing the undersigned explained as much to the Defendant.  She was told that "the probation office will prepare" the PSR, which "will contain," among other things, "information . . . about any prior criminal record you may have," and "may also make a recommendation to the Court regarding the sentence in this case."  (No. 1:16-cr-10017-JDB-1, D.E. 49 at PageID 205-06.)  The Defendant was further informed that "Mr. Polland will have the opportunity to review [the PSR] with you and to file a position paper on any objections you might have to the contents of that report."  (*Id.*, D.E. 49 at PageID 205.)  Therefore, because Powell did not waive her right to challenge her career-offender status, counsel cannot be said to have rendered ineffective assistance by failing to incorrectly inform her that her guilty pleas resulted in such a waiver.

The remaining allegations also do not support Claim 2.  More to the point, the record in Petitioner's criminal case undermines her assertions that her guilty plea was involuntary due to Polland's alleged lack of knowledge of the likely sentence and alternative courses of action,[4] and his failure to bargain for her placement in a drug treatment program and to contest the forfeiture of her vehicle.

The plea agreement itself contained Powell's representation that she was "satisfied that all acts and/or any omissions of counsel for the defense have been the result of reasonable professional judgment and that [she] has been provided adequate legal representation in this case."  (*Id.*, D.E. 21 at PageID 25.)  Moreover, at the start of the change of plea hearing, the undersigned asked her "If there is anything I ask you that you do not understand or wish to consult with your attorney, Mr. Pol[l]and, will you let me know?"  (*Id.*, D.E. 49 at PageID 193.)  Powell answered "Yes, sir." (*Id.*, D.E. 49 at PageID 193.)  She responded in the affirmative when asked "Do you understand what you are doing here today?" and "Have you had sufficient opportunity to discuss this matter with your attorney?"  (Id., D.E. 49 at PageID 194.)  She also responded "Yes, Sir," when queried "Are you satisfied with his advice and representation given to you in this case?"  (*Id.*, D.E. 49 at PageID 194.)  The Court read both counts of the indictment and asked the Defendant whether she understood what she was being charged with in each count and she answered that she did.  The Court advised her of the criminal trial and appeal rights she was giving up and the potential penalties for the crimes she was pleading guilty to, and she stated that she understood.  She denied that anyone threatened or forced her to plead guilty.  After the prosecutor summarized the plea

---

[4]  The allegation that counsel lacked knowledge of the likely sentence and alternative courses of action is also conclusory.  Petitioner does not specify what information, exactly, counsel did not know that would likely have prompted her to go to trial had she been so informed.

agreement, the Court asked the Defendant if she understood and agreed to the terms of the plea agreement and she stated that she did.  She affirmed that she was pleading guilty because she was, "in fact, guilty of the offenses[.]"  (*Id.*, D.E. 49 at PageID 210.)  Upon finding that the Defendant was "freely and voluntarily pleading guilty," the Court accepted the plea.  (*Id.*, D.E. 49 at PageID 210-11.)

Powell's in-court "representations . . . as well as [the] findings made by the [the Court in] accepting the plea, constitute a formidable barrier" to § 2255 relief.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Craig v. United States*, No. 2:04-cr-78, 2011 WL 864359, at *6 (E.D. Tenn. Mar. 10, 2011) ("[T]he transcript of the change of plea hearing confirms the knowing and voluntary nature of the waiver."), *aff'd* 513 F. App'x 487 (6th Cir. 2013).  Petitioner has not overcome her sworn statements that she understood the terms of the plea agreement, the many constitutional rights she was waiving, and the key elements of the offenses to which she was pleading guilty.

In addition, to the extent she posits that her guilty pleas were not knowing and voluntary because counsel did not adequately inform her about the potential sentences, any alleged misunderstanding was cured during the plea colloquy.  Specifically, the undersigned explained the possible penalties and made "it clear [that] the Court, not the parties, would determine h[er] sentence[.]"  *Garnica v. United States*, 361 F. Supp. 2d 724, 737 (E.D. Tenn. 2005); *see also Ramos v. Rogers,* 170 F.3d 560, 561 (6th Cir. 1999)) ("The trial court's proper plea colloquy cured any misunderstanding [petitioner] may have had about the consequences of his plea.'").

What is more, the bargain Powell received cuts against her bald assertion that, but for Polland's alleged deficient performance, she would have insisted on going to trial.  *See Moore v.*

13

*United States*, 676 F. App'x 383, 385 (6th Cir. 2017) (holding that, in determining whether a "rational" criminal defendant would have insisted on going to trial, a court must consider the "disadvantages" she would have faced had she rejected the plea offer).  The PSR shows that, had Petitioner not pleaded guilty, the Government could have superseded the indictment and charged her with the distribution of fifty grams or more of methamphetamine.  (PSR at ¶ 9.)  With that additional charge, the potential penalty would have increased to life in prison.  *See* 21 U.S.C. § 841(b)(1)(B)(viii).  Under the Guidelines, this change would have resulted in a substantially higher offense level and advisory sentencing range.  *See* U.S.S.G. § 4B1.1.

Finally, it bears noting that the inmate abandoned her request to withdraw her guilty pleas.  As discussed earlier, she complained to the Court around the time of the sentencing hearing that she had not understood the consequences of pleading guilty.  However, she later told Wimbley that she no longer wished to withdraw the pleas.

Accordingly, on this record, Petitioner's assertion that her guilty plea was involuntary due to counsel's ineffective assistance is without merit.  Claim 2 is DENIED in its entirety.

## IV.   Claim 3

Powell asserts that her retained attorney provided ineffective assistance at sentencing by "fail[ing] to prepare to adequately argue the sentencing factors favorable to Petitioner [which] subjected her to greater punishment than [s]he might have otherwise received."  (D.E. 1-1 at PageID 22.)  She alleges that "counsel failed to properly . . . request or provide documentation, including criminal history, family ties, or character correspondence that might have induced the court to sentence [her] to a more appropriate sentence."  (*Id.*)  She  supports her general allegations with only two specific instances of alleged attorney ineffectiveness, to wit: "Defense counsel failed

14

to introduce evidence of [her] admitted drug addiction, which resulted in her making almost daily purchases of illegal drugs," and "failed to have Petitioner recommended by the court and the probation department for admission to the Residential Drug and Alcohol Program, which would have provided up to a year of sentence credit." (*Id.* at PageID 22-23.)  Respondent argues that the claim is without merit.  The Court agrees.

Even assuming that Polland was ineffective in the ways identified by Powell, there was no prejudice resulting from his conduct.  As indicated earlier, Wimbley took over representation of the Defendant for purposes of sentencing.  Although Polland had already filed a position paper, the public defender submitted a new position paper regarding sentencing and appeared before the Court at the sentencing hearing.  Therefore, any alleged deficiencies in Polland's handling of the case at the early sentencing stage had no effect.

Furthermore, even if Petitioner means to also complain about Wimbley's handling of the sentencing factors and a request for drug treatment,[5] she still is not entitled to relief.  The Court was well aware of the Defendant's drug addiction and her desire to participate in drug treatment because those facts were set forth in the PSR.  (PSR at ¶ 121.)  The information was also made clear to the Court through the efforts of Wimbley.  Her position paper presented several pages of facts and arguments regarding the Defendant's drug addiction and family history.  (No. 1:16-cr-10017-JDB-1, D.E. 41 at PageID 157-59.)  The paper also requested that the Defendant be placed in the Bureau of Prison's 500-hour residential drug abuse program.  (*Id.*, D.E. 41 at PageID 159.)  During the sentencing hearing, counsel successfully sought the undersigned's recommendation for

---

[5]  Petitioner raised for the first time in her Reply a complaint about Wimbley's handling of the drug treatment issue.  Although the argument could be regarded as having been waived, *see Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010), the Court nevertheless addresses it.

the treatment. (*Id.*, D.E. 50 at PageID 228; *id.*, D.E. 46 at PageID 173). Based on this record, there is nothing more that the public defender could have done that likely would have resulted in a favorable change in the sentencing outcome.

As Petitioner has not shown that she received ineffective assistance at sentencing by either of her attorneys, Claim 3 is DENIED.

V.     Claim 4

Powell asserts that counsel provided ineffective assistance by "fail[ing] to ensure that [she] received an adequate sentence reduction for her cooperation." (D.E. 1 at PageID 8.) She alleges that counsel did "not follow[] through on the appropriate sentence credit for cooperation." (D.E. 1-1 at PageID 23.) The Government notes that it "feels constrained in responding to this allegation as it involves a matter the Court placed under seal." (D.E. 17 at PageID 75.) It "refer[s] the Court to [the] Sealed" transcript of proceedings held in the criminal case on January 4, 2017, and "respectfully notes [that] [P]etitioner's advisory guideline sentence range was 151-188 months, and her imposed sentence was 130 months." (*Id.*)

The claim must be denied for two reasons. First, Petitioner does not explain what an "appropriate sentence credit for cooperation" would have been had counsel done more. Second, the Court has reviewed the sealed transcript and finds that counsel's performance was not deficient in any respect. In addition, far from being prejudiced by counsel's representation, Petitioner received a substantial benefit in the form of a lower advisory Guidelines range and a commitment by the Government to recommend the low-end of that range. After considering the recommendation, the Court imposed a bottom-of-the-range term of incarceration. Claim 4 is therefore without merit and is DENIED.

16

VI.     Claim 5

Petitioner asserts that her sentence could be reduced by application of the Supreme Court's

holding in *Mathis v. United States*, 136 S. Ct. 2243 (2016). Respondent maintains that precedent

in this circuit forecloses the argument. The Court agrees.

For purposes of the Guidelines' career offender provision, a predicate

"controlled substance offense" is

> an offense under federal or state law, punishable by imprisonment for a term
> exceeding one year, that prohibits the manufacture, import, export, distribution, or
> dispensing of a controlled substance (or a counterfeit substance) or the possession
> of a controlled substance (or a counterfeit substance) with intent to manufacture,
> import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

To determine if a conviction constitutes a controlled substance offense, a court must "apply

a 'categorical' approach," which focuses on the statute under which the petitioner was convicted,

rather than the petitioner's conduct. *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010)

(citing *Taylor v. United States*, 495 U.S. 575, 600 (1990) ). If the statute is "divisible," meaning

it describes multiple offenses, the court may "employ the 'modified categorical

approach.'" *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) (quoting *Descamps v.*

*United States*, 570 U.S. 254, 257 (2013)). That approach permits the examination of "a limited

class of documents" from the defendant's prior criminal case in order "to determine which

alternative formed the basis of the defendant's . . . conviction." *Id.* (quoting *Descamps*, 570 U.S.

at 257).

The Supreme Court in *Mathis* clarified that a statute is divisible if it lists alternative

elements, not alternative means of satisfying one or more elements. *Mathis*, 136 S. Ct. at 2249. If

the statute lists alternative means, then it is "indivisible," and resort to the limited class of documents is prohibited. *Id.* at 2248.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches §4B1.2(b)'s definition of a 'controlled substance offense.'" *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir. May 31, 2018).  If there is no match, the prior conviction cannot be counted toward the defendant's career offender status.  *Id.* at 555.

As indicated above, Petitioner qualified as a career offender based on two Tennessee convictions for possession of methamphetamine "with intent to manufacture, deliver, or sell." Tenn. Code Ann. § 39-17-417(a)(4).  The Sixth Circuit has held, post-*Mathis*, that the crime is categorically a controlled substance offense for purposes of the Guidelines' career offender provision.  *See United States v. Graham*, 824 F. App'x 332, 335-36 (6th Cir. 2020) (citing *United States v. Garth*, 965 F.3d 493 (6th Cir. 2020)) (defendant's Tennessee conviction for possession of drugs with intent to manufacture, deliver, or sell was categorically a controlled-substance offense under the Guidelines)

Therefore, Petitioner's assertion that her prior Tennessee convictions might no longer qualify as career-offender predicates is without merit.[6]  Claim 5 is DENIED.

For all of these reasons, the Petition is DENIED.

## APPEAL ISSUES

---

[6]  Although Respondent did not raise the argument, Claim 5 is also subject to dismissal because it is non-cognizable in a § 2255 proceeding.  *See Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1573 (2019) (petitioner's challenge to his career-offender status was not cognizable under § 2255).

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition.  Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

19

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore DENIED.[7]

IT IS SO ORDERED this 4th day of March 2021.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.